```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
UNITE NATIONAL RETIREMENT FUND, f/k/a/ :
I.L.G.W.U. NATIONAL RETIREMENT FUND, :
                                    :
              Plaintiff,            :
                                    :          04 Civ. 9869 (BSJ)
        v.                          :
                                    :
VERANDA MARKETING COMPANY, a sole   :
proprietorship owned by Lee Ades, LEE :
ADES, individually, ARIELA U.S.A., INC.,:
and SUGARMILL CLOTHING, CORP.,      :
                                    :
              Defendants.           :
------------------------------------x
UNITE NATIONAL RETIREMENT FUND, f/k/a/ :
I.L.G.W.U. NATIONAL RETIREMENT FUND :
                                    :          06 Civ. 0055 (BSJ)
              Plaintiff,            :
                                    :
        v.                          :          OPINION AND ORDER
                                    :
ARIELA, INC., and PEPPER CLUB, INC., :
                                    :
              Defendants.           :
------------------------------------x
```

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 7/13/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

In these related actions, Plaintiff UNITE National Retirement Fund ("Plaintiff" or the "Fund"), an employee benefit fund, asserts claims for withdrawal liability, pursuant to Sections 4201 through 4225 and 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381 through 1405 and 1451, against defendants Veranda Marketing Company ("Veranda"), Lee Ades ("Ades"), Ariela USA,

1

Inc. ("Ariela USA"), and Sugarmill Clothing Corporation ("Sugarmill"); and Ariela, Inc. ("Ariela"), and Pepper Club, Inc. ("Pepper Club").

Plaintiff has moved for summary judgment on these claims; defendants have not opposed that motion.[1] For the reasons that follow, the Court GRANTS Plaintiff's motion for summary judgment.

## BACKGROUND

### 1. Withdrawal Liability

The MPPAA amended ERISA to require an employer who withdraws from a multiemployer defined benefit pension plan to contribute "withdrawal liability" to the plan. This withdrawal liability represents that employer's proportionate share of the plan's unfunded vested benefits. Moreover, ERISA classifies all trades or businesses that are under "common control" as a single employer for purposes of withdrawal liability. See 29 U.S.C. § 1301(b)(1). Thus, each member of a commonly controlled group of trades or businesses is liable for the withdrawal liability of any other member of that group. See I.L.G.W.U. Nat'l Ret. Fund v. ESI Group, Inc., No. 92 Civ. 0597 (PKL), 2002 U.S. Dist. LEXIS 8614, at *15 (S.D.N.Y. May 15, 2002).

### 2. Facts[2]

---

[1] Defendants' opposition was due on May 26, 2009.
[2] The facts set forth below are undisputed; they are taken from the Declaration of David C. Sapp and the exhibits annexed thereto, and

2

Plaintiff was established and maintains a multi-employer pension plan (the "Plan") within the meaning of ERISA. The Plan provides pension benefits to members of UNITE HERE, an organization that represents workers throughout the U.S. and Canada who work in the hospitality, gaming, food service, manufacturing, textile, laundry, and airport industries.

Ariela, a garment manufacturer, was a party to a collective bargaining agreement with UNITE HERE, or an affiliate thereof. Pursuant to this collective bargaining agreement, Ariela was obligated to make contributions to the Fund on behalf of certain of its employees. In or about 1999, Ariela ceased production of goods and ceased contributing to the Fund. As a result of these cessations, in or about 1999, the Fund determined that Ariela had withdrawn from the Plan and incurred withdrawal liability within the meaning of 29 U.S.C. § 1381.

On December 7, 1999, the Fund notified Ariela of that determination. In so doing, the Fund informed Ariela that, as a result of its withdrawal, it had incurred a withdrawal liability to the Fund in the amount of $549,354.00; demanded payment of that withdrawal liability; and set forth a statutorily-

---

Plaintiff's Statement of Material Facts as to which it is Contended there is No Genuine Issue to be Tried, submitted Pursuant to Civil Rule 56.1 of the United States District Court for the Southern District of New York. Because defendants have not disputed Plaintiff's statement of facts, those facts are "deemed to be admitted for purposes of the motion." S.D.N.Y. Local Civil Rule 56.1(c).

determined schedule of quarterly withdrawal liability payments under which Ariela was to pay the Fund $81,120.02 per quarter for six quarters, with a seventh and final payment in the amount of $77,240.68. Ariela failed to make its first payment, which was due on January 6, 2000. On or about March 2, 2000, the Fund notified Ariela that, unless it cured that failure within sixty days, Ariela would be in default, within the meaning of 29 U.S.C. § 1399(c)(5). To this date, Ariela has failed to make a single withdrawal liability payment. Nor has Ariela ever initiated arbitration of the amount of its withdrawal liability pursuant to 29 U.S.C. § 1401. At the time of Ariela's 1999 withdrawal, the Plan's rules relating to withdrawal liability imposed interest on delinquent payments at a rate equal to two percentage points above the prime rate as published in THE WALL STREET JOURNAL on each date from the due date to the date paid, and compounded daily.

At the time of Ariela's withdrawal in 1999, defendant Ades was its president and sole shareholder. At that time, Ades was also the sole proprietor of defendant Veranda, a sole proprietorship engaged in the trade or business of commission sales of contracted labor. Veranda generated gross incomes of $412,354 in 1998 and $457,863 in 1999. In 1999, Ades was also the sole owner of defendants Ariela USA, a corporation engaged in the trade or business of commission sales of contract labor

4

and consulting; Pepper Club, a corporation that manufactured and sold garments; and Sugarmill, a corporation engaged in the trade or business of commission sales of contract labor and the importing of garments. In 1999, Veranda, Ariela USA, Pepper Club and Sugarmill were each trades or businesses within the meaning of ERISA.

### 3. Procedural History

On December 14, 2004, Plaintiff commenced the first of these actions, Civil Case No. 04 Civ. 9869, against Ariela, Ades, Veranda, Ariela USA, Pepper Club and Sugarmill. In that action, Plaintiff was initially unable to serve Ariela and Pepper Club. Accordingly, Plaintiff's claims against Ariela and Pepper Club were dismissed without prejudice for failure to effect service within the time limits set forth in Federal Rule of Civil Procedure 4(m).

On January 4, 2006, Plaintiff filed Civil Case No. 06 Civ. 00055 against Ariela and Pepper Club, asserting claims for the same withdrawal liability originally asserted. By Orders dated June 24, 2008, the Court denied Ariela's and Pepper Club's motion to dismiss for insufficiency of service and to stay the action, and Ades' motion to dismiss for insufficiency of service. (Document 40, Civil Case No. 06 Civ. 0055; Document 82, Civil Case No. 06 Civ. 00055.) Plaintiff moved for summary judgment on March 20, 2009.

## LEGAL STANDARD

A court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).

If a non-moving party fails to oppose a summary judgment motion, "summary judgment, if appropriate, shall be entered against" it. Fed. R. Civ. P. 56(e). The Second Circuit "has made clear, however, that where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citation and quotations omitted). If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then "summary judgment

6

must be denied even if no opposing evidentiary matter is presented." Id. at 244.

To that end, defendants' failure to oppose Plaintiff's motion alone does not justify the granting of summary judgment. Courts have, however, granted unopposed motions for summary judgment "so long as [movants] have met their threshold burden of production." Washington v. City of New York, No.05 Civ. 8884 (LAP), 2009 U.S. Dist. LEXIS 47488, *16 (S.D.N.Y. June 5, 2009).

## DISCUSSION

### 1. Withdrawal Liability

The MPPAA requires an employer who is obligated to contribute to a multiemployer pension plan to pay its proportionate share of the plan's unfunded vested benefits upon withdrawal from the plan. See 29 U.S.C. §§ 1381(a), 1399; Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 724-25, (1984). "The purpose of withdrawal liability is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'" I.L.G.W.U. Nat'l Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 881 (2d Cir. 1988). Indeed, the MPPAA was designed to "protect the interests of participants and beneficiaries in financially distressed multiemployer plans and to encourage the growth and maintenance of multiemployer plans."

T.I.M.E.-DC v. Management-Labor Welfare & Pension Funds, 756 F.2d 939, 943 (2d Cir. 1985).

The MPPAA grants broad authority to pension plan sponsors to collect withdrawal liability. Initially, the plan sponsor must decide whether a withdrawal has occurred, the amount of the employer's withdrawal liability, and the schedule for liability payments to the fund. See 29 U.S.C. §§ 1381, 1382(1), 399(b)(1).

Once the plan sponsor notifies an employer of liability, the employer has 90 days to seek reconsideration regarding the alleged liability. See 29 U.S.C. § 1399(b). If the parties do not resolve the dispute, either party may initiate arbitration, but they must do so within 60 days after the earlier of either (1) notification by the plan sponsor of the result of the requested reconsideration, or (2) 120 days after the date reconsideration was requested. See 29 U.S.C. § 1401(a)(1); Bowers v. Transportation Maritima Mexicana, S.A., 901 F.2d 258, 261 (2d Cir. 1990). If neither party demands arbitration within the statutorily prescribed time limits, the amounts demanded become "due and owing on the schedule set forth by the plan sponsor," and the employer is estopped from challenging any factual determination of the plan sponsor concerning the assessment of withdrawal liability. 29 U.S.C. § 1401(b)(1); see Levy Bros. Frocks, Inc., 846 F.2d at 886-87; New York State

8

Teamsters Conf. Pension & Retirement Fund v. McNicholas Transp. Co., 848 F.2d 20, 23 (2d Cir. 1988). In other words, a failure to initiate arbitration within the statutory time period operates to fix withdrawal liability and foreclose any challenge to its imposition. See I.L.G.W.U. Nat'l Retirement Fund, 846 F.2d at 886-87.

In any action to collect withdrawal liability "in which a judgment in favor of the plan is awarded, the court shall award the plan," in addition to the unpaid withdrawal liability, reasonable attorneys' fees and costs, interest, and liquidated damages. 29 U.S.C. §§ 1132(g)(2)(B). Such award is a mandatory remedy. See Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co., No. 05 Civ. 6819 (SAS), 2006 U.S. Dist. LEXIS 28281, at *16-17 (S.D.N.Y. May 10, 2006).

Here, as set forth above, Ariela permanently withdrew from the Plan in 1999; Plaintiff notified Ariela that, as a result of that withdrawal, Ariela incurred a withdrawal liability pursuant to 29 U.S.C. § 4201; Plaintiff demanded payment of that withdrawal liability; and Ariela failed to make any payments in satisfaction of that liability. Further, Ariela did not request arbitration within the statutory time period; that failure precluded Ariela from challenging Plaintiff's determination of its liability.

By virtue of Ariela's default, therefore, the Court finds Ariela liable to the Fund for the entire amount of its withdrawal liability, plus interest, liquidated damages, costs and attorneys' fees.

**2. Joint and Several Liability**

Plaintiff contends that Veranda, Ariela USA, Pepper Club and Sugarmill are jointly and severally liable for Ariela's withdrawal liability because they are trades or businesses that are, with Ariela, under Ades' common control.  The Court agrees.

Withdrawal liability extends to any trade or business under "common control" with the withdrawing employer.  Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301 (b)(1) provides in pertinent part: "All employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."  Thus, when withdrawal liability is imposed on an employer, all other commonly controlled trades or businesses are liable as well. See, e.g., I.L.G.W.U. Nat'l Ret. Fund, 2002 U.S. Dist. LEXIS at *15; Trustees of the Amalgamated Ins. Fund v. Saltz, 760 F. Supp. 55, 57-58 (S.D.N.Y. 1991).

For purposes of determining "common control," Section 4001(b) of ERISA, 29 U.S.C. § 1301(b), refers to the regulations prescribed by the Secretary of Treasury under Section 414(c) of

10

the Internal Revenue Code of 1954. See 26 C.F.R. § 1.414(c)-2(b). These regulations provide that two or more trades or businesses are under "common control" if they are members of a "parent-subsidiary" or "brother-sister" group of trades or businesses under common control. 26 C.F.R. § 1.414(c)-2(a).

> The term "brother-sister group of trades or businesses under common control" means two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own (directly and with the application of § 1.414(c)-4) a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization. The five or fewer persons whose ownership is considered for purposes of the controlling interest requirement for each organization must be the same persons whose ownership is considered for purposes of the effective control requirement.

26 C.F.R. § 1.414(c)-2(c).

A "controlling interest" is defined as ownership of stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote of such corporation, or at least 80% of the total value of shares of all classes of stock in such corporation. See 26 C.F.R. § 1.414(c)-2(b)(2). "Effective control" is defined as ownership of "stock possessing more than 50% of the total combined voting power of all classes of stock entitled to vote or more than 50% of the total value of shares of all classes of stock of such corporation." 26 C.F.R. § 1.414(c)-2(c)(2)(i).

Therefore, a "brother-sister" group of trades or businesses under common control must be controlled by the same five or fewer persons owning at least 80% of the shares of each corporation, with at least 50% of the shareholder's ownership interests in each corporation identical. See 26 C.F.R. § 1.414(c)-2. Also, each shareholder must own shares in each of the corporations. See United States v. Vogel Fertilizer, 455 U.S. 16, 21-22 (1982).

As set forth above, at the time of Ariela's withdrawal from the Fund, Ades was the sole owner, sole proprietor, or sole shareholder of Ariela, Veranda, Ariela USA, Pepper Club and Sugarmill, each of which were "trades or businesses" within the meaning of ERISA. These entities compose a "brother-sister" group of trades or businesses under Ades' common control. Accordingly, Veranda, Ariela USA, Pepper Club and Sugarmill are jointly and severally liable, with Ariela, for Ariela's withdrawal liability.

### 3. Ades' Individual Liability

Finally, the Court finds Ades jointly and severally liable, in his individual capacity, for Ariela's withdrawal liability. ERISA treats "[a]n individual who owns the entire interest in an unincorporated trade or business . . . as his own employer." 29 U.S.C. § 1301(b)(1). As set forth above, Ades is the sole proprietor of Veranda, an unincorporated business under common

control with Ariela.  In that vein, Ades is personally liable for Veranda's business debts.  See Trs. of the Mason Tenders v. Faulkner, 484 F. Supp. 2d 254, 257 (S.D.N.Y. 2007) (finding defendant personally liable for his sole proprietorship's ERISA violations).  Ades' joint and several liability for Ariela's withdrawal liability therefore follows from Veranda's.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and finds all defendants jointly and severally liable to Plaintiff for the amount of $549,354.00, plus interest, liquidated damages, and attorneys' fees and costs.  The Court directs Plaintiff to submit a proposed judgment stating that total amount by July 16, 2009.

SO ORDERED:

_____
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          July 9, 2009